IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RAMONA WILSON**<br>4990 Columbia Pike #116<br>Arlington, Virginia 22204<br><br>                              **Plaintiff**<br><br>v.<br><br>**SUPERCLUB IBIZA, LLC**<br>d/b/a Ibiza Nightclub D.C.<br>1221 First Street, N.E.<br>Washington, D.C. 20002<br><br>                              **Defendant.** | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

**I.     NATURE OF THIS ACTION**

1.  This is an action for violations of the Americans with Disabilities Act ("ADA") and the District of Columbia Human Rights Act ("DCHRA").

2.  Plaintiff Ramona Wilson ("Ms. Wilson") has Type 1 diabetes. Type 1 diabetes is a physical impairment that substantially limits one or more of her major life activities, including eating, concentrating, and the function of her endocrine system.

3.  To treat her Type 1 diabetes, Ms. Wilson wears a small device known as an insulin pump, which she attaches to her body via catheter.

4.  Because it is a physical impairment that substantially limits Ms. Wilson's major life activities, Type 1 diabetes is a disability as defined by the ADA and the DCHRA.

5. Defendant Superclub Ibiza, LLC ("Defendant") operates Ibiza Nightclub D.C. ("Ibiza") in Washington, D.C.

6. Ms. Wilson seeks redress for Defendant's discrimination against her and its refusal to admit her to Ibiza on September 11, 2010 based on her status as a person with a disability.

7. Though Defendant's employees refused to admit Ms. Wilson, they offered to admit her non-disabled friends and relatives and continued to admit other patrons before and after singling out Ms. Wilson.

8. Ms. Wilson visited Ibiza at least five times between 2009 and February 2010. She enjoys dancing and spending time with her friends and family members at Ibiza and similar nightclubs. If Defendant changed its admission policies to accommodate individuals with disabilities, Ms. Wilson would return to Ibiza.

9. Ms. Wilson seeks an injunction under the ADA and DCHRA and monetary damages under the DCHRA. She further seeks to ensure that she and other persons with disabilities are able to fully and equally enjoy the goods, services, facilities, privileges, advantages and accommodations of Ibiza.

## II. JURISDICTION AND VENUE

10. The Court has original subject matter jurisdiction of the ADA claims based upon violations of the federal civil rights laws pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and 1343(a)(4).

11. Because the DCHRA claims and the ADA claims arise out of a common set of operative facts such that they form part of the same case or controversy, the Court has

supplemental jurisdiction over the subject matter of the DCHRA claim pursuant to 28 U.S.C. § 1367(a).

12. The Court has personal jurisdiction over Defendant pursuant to D.C. Code §§ 13-422 and 13-423 because: (1) Defendant is an entity organized under the laws of the District of Columbia; (2) Ms. Wilson's claims for relief arise from Defendant's transaction of business in the District of Columbia; and (3) Ms. Wilson's claims for relief arise from Defendant's commission of a wrongful act in the District of Columbia by an act or omission in the District of Columbia.

13. Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant resides in the District of Columbia and all of the acts or omissions giving rise to this action occurred in the District of Columbia.

### III. PARTIES

14. **Plaintiff Ramona Wilson** is a twenty-seven-year-old resident of the state of Virginia.

15. In August 2002, just before she started college at Virginia State University, Ms. Wilson was diagnosed with Type 1 diabetes. In patients with Type 1 diabetes, the body does not produce insulin. Insulin is a hormone that converts sugar, starches and other food into energy. Patients with Type 1 diabetes must inject themselves with insulin in order to stay alive.

16. Type 1 diabetes is a physical impairment that substantially limits Ms. Wilson's major life activities.

17. Ms. Wilson currently uses an insulin pump to deliver insulin into her system. The pump delivers insulin through a catheter, which she must attach to her body. The pump is

small—about the size of a cellular phone—and she usually wears it on a clip, which she either hangs from her clothing or undergarments or carries in her pocket.

18. The insulin pump must be attached to Ms. Wilson's body at nearly all times. If Ms. Wilson were to remove the pump for more than a short period of time, she would be in danger of going into diabetic ketoacidosis. Diabetic ketoacidosis can cause many dangerous complications, including fatigue, pain, decreased consciousness, heart attack, cerebral edema, and renal failure.

19. In addition to monitoring her blood levels and injecting herself with insulin, Ms. Wilson must follow a special diet and carefully monitor what she eats.

20. Due to her disability and the dietary restrictions she follows to manage that disability, Ms. Wilson did not drink alcohol at any time on September 11, 2010.

21. Ms. Wilson is currently employed by the government of Fairfax County, Virginia as an Intellectual Disability Specialist. In that capacity, she provides daily living support for disabled adults who live in a group home. She holds a Master's degree in Social Work from Howard University and a Bachelor's degree in Psychology from Virginia State University.

22. Because Type 1 diabetes limits Ms. Wilson's ability to eat and concentrate and limits the function of her endocrine system, Ms. Wilson is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(1), and the DCHRA, D.C. Code § 2-1401.02(5A).

23. Upon information and belief, at all times relevant to this action, **Defendant Superclub Ibiza, LLC** was a limited liability company organized under the laws of the District of Columbia. It operates a nightclub under the trade name "Ibiza Nightclub DC" or "Ibiza." The

nightclub is located at 1222 First Street, N.E., Washington, D.C. 20002. Defendant also has its principal office at this address.

24. Ibiza is a place of public accommodation under the ADA, 42 U.S.C. § 12181(7)(B), and the DCHRA, D.C. Code § 2-1401.02(24).

25. Title III of the ADA applies to Superclub Ibiza, LLC because it operates Ibiza, a place of "public accommodation" within the meaning of the ADA, 42 U.S.C. §§ 12181(7)(B), 12182(a).

26. The DCHRA applies to Superclub Ibiza, LLC because it is organized under the laws of the District of Columbia and it operates a "place of public accommodation" within the meaning of the DCHRA, D.C. Code §§ 2-1401.02(24), 2-1402.31(a)(1).

### IV. STATEMENT OF FACTS

27. Ibiza is a popular nightclub in Washington, D.C. It has multiple bars and dance floors.

28. Ms. Wilson patronized Ibiza approximately five times between 2009 and February 2010. She enjoyed her previous visits because she likes to dance and spend time with friends at Ibiza and similar nightclubs.

29. Ms. Wilson began using an insulin pump to treat her diabetes in February 2010.

30. On September 11, 2010, Ms. Wilson planned to go to Ibiza with her cousins, Shana Gregory and Tenecia Tyson; another cousin's wife, Cassandra McCoy; and their friend, Ashley Ross. Ms. Gregory, Ms. Tyson, Ms. McCoy, and Ms. Ross were all visiting from the Virginia Beach area. They were celebrating Ms. Gregory's birthday.

31. As of September 11, 2010, Ms. Wilson had not visited Ibiza since she began using an insulin pump in February 2010.

32. Because Ms. Wilson lives in the D.C. area, she planned the group's activities for the weekend. She suggested that they go to Ibiza because she knew that her friends and relatives enjoy dancing and socializing in nightclubs. She thought that the group would have a good time there, based on her previous experiences at Ibiza.

33. Ms. Wilson had put their names on Ibiza's "VIP Guestlist" and received an email from Ibiza confirming that their names had been added to the guestlist.

34. The group arrived at Ibiza around 11:00 pm. They stood in a line outside of the entrance. Each patron was being searched by an Ibiza employee before being allowed to enter the nightclub. A female security guard was searching all the female patrons. The female security guard was standing on a raised platform at the club's entrance. Each patron had to climb up a few steps to get to her. The line of patrons was adjacent to the platform.

35. Ms. Wilson was wearing a dress and had attached her insulin pump to the front of her bra, inside of the dress.

36. The female security guard searched some of the members of Ms. Wilson's party.

37. Some members of Ms. Wilson's party were offered admission to the nightclub, but remained outside to wait until everyone in the group was admitted.

38. When the female security guard reached Ms. Wilson, she began searching Ms. Wilson and instructed her to remove the object that was in her bra.

39. Ms. Wilson explained to the female security guard that she was a diabetic, and that the object under her dress was an insulin pump. Ms. Wilson said that she could not take the

pump out, because it was attached to her body by a catheter. Ms. Wilson said that she could go to the bathroom to remove it and show it to the guard.

40. The female security guard instructed Ms. Wilson to stand to the side of the line while she went to get another Ibiza employee. Ms. Gregory, Ms. Tyson, Ms. McCoy, and Ms. Ross waited outside with Ms. Wilson for several minutes.

41. While they waited, Ibiza employees continued to admit other patrons to the nightclub.

42. The female security guard returned with another Ibiza employee, who appeared to be a manager, based on his attire and demeanor. The manager told Ms. Wilson that he did not know if they could let her into the nightclub. He said that she was not in trouble, but that she would have to cooperate. Ms. Wilson explained to him that the object under her dress was an insulin pump and that she needed it to control her diabetes.

43. A few minutes later, a male security guard walked over to Ms. Wilson and her friends and relatives and asked what was going on. She tried to explain the situation to him.

44. The male security guard loudly told Ms. Wilson that she had to leave.

45. As Ms. Wilson and her friends and relatives left Ibiza, they could hear people in line commenting on the situation. One person exclaimed, "This is crazy!"

46. Ms. Wilson suffered and continues to suffer embarrassment, humiliation, and emotional distress as a result of the treatment she received at Ibiza.

47. Ms. Wilson continues to visit other nightclubs to dance and spend time with friends. She is on Ibiza's email distribution list and continues to receive emails advertising events at Ibiza that she would like to attend. She would return to Ibiza if she were assured that

Ibiza had changed its admission policies in order to accommodate individuals who use medical devices like insulin pumps and that she would not experience discrimination there again.

## COUNT I
### (Violation of the ADA for Denial of Access, 42 U.S.C. § 12182(b)(1)(A)(i))

48.     Ms. Wilson alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 46 of this Complaint.

49.     The ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

50.     The ADA prohibits discrimination by "subject[ing] an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(b)(1)(A)(i).

51.     Defendant denied Ms. Wilson the opportunity to participate in or benefit from Ibiza's goods, services, facilities, privileges, advantages, and accommodations.

52.     Defendant's denial of goods, services, facilities, privileges, advantages, and accommodations to Ms. Wilson was based on Ms. Wilson's disability.

53.     Defendant's denial of goods, services, facilities, privileges, advantages, and accommodations to Ms. Wilson violated 42 U.S.C. §§ 12182(a) and 12182(b)(1)(A)(i).

54.     Defendant's failure to comply with the ADA has resulted in and will continue to result in harm to Ms. Wilson and other individuals with disabilities, unless and until Defendant is ordered by this Court to modify its policies, practices, and procedures.

## COUNT II
### (Violation of the ADA for Imposition of Eligibility Criteria, 42 U.S.C. § 12182(b)(2)(A)(i))

55. Ms. Wilson alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 53 of this Complaint.

56. Discrimination prohibited by the ADA includes "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(i).

57. Defendant refused to admit Ms. Wilson to Ibiza, but offered to admit her non-disabled friends and relatives, and continued to admit other patrons before and after singling out Ms. Wilson.

58. Defendant's refusal to admit Ms. Wilson and its singling her out for this treatment was based on Ms. Wilson's disability.

59. Defendant's refusal to admit Ms. Wilson and its singling her out for this treatment constituted the imposition of illegal eligibility criteria for the provision of goods and services in violation of 42 U.S.C. §§ 12182(a) and 12182(b)(2)(A)(i).

60. Defendant's failure to comply with the ADA has resulted in and will continue to result in harm to Ms. Wilson and other individuals with disabilities, unless and until Defendant is ordered by this Court to modify its policies, practices, and procedures.

## COUNT III
### (Violation of the ADA for Failure to Modify Policies, 42 U.S.C. § 12182(b)(2)(A)(ii))

61. Ms. Wilson alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 59 of this Complaint.

62. The discrimination prohibited by the ADA includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford . . . goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii).

63. Defendant failed to make any reasonable modification to its admission policies, practices, and procedures to accommodate Ms. Wilson's disability when it denied Ms. Wilson access to Ibiza.

64. Defendant's failure to reasonably modify its admission policies, practices, and procedures to accommodate Ms. Wilson's disability violated 42 U.S.C. § 12182(b)(2)(A)(ii).

65. Defendant's failure to comply with the ADA has resulted in and will continue to result in harm to Ms. Wilson and other individuals with disabilities, unless and until Defendant is ordered by this Court to modify its policies, practices, and procedures.

## COUNT IV
### (Violation of the DCHRA, D.C. Code § 2-1401.01 *et seq.*)

66. Ms. Wilson alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 64 of this Complaint.

67. The DCHRA provides: "[i]t shall be an unlawful discriminatory practice to . . . wholly or partially for a discriminatory reason based on the . . . disability . . . of any individual: … to deny, directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations." D.C. Code § 2-1402.31(a)(1).

68. Defendant denied Ms. Wilson the full and equal enjoyment of Ibiza's goods, services, facilities, privileges, advantages, and accommodations.

69.     Defendant's denial of Ibiza's goods, services, facilities, privileges, advantages, and accommodations to Ms. Wilson was based on Ms. Wilson's disability.

70.     Defendant's denial of goods, services, facilities, privileges, advantages, and accommodations to Ms. Wilson violated D.C. Code § 2-1402.31(a)(1).

71.     Defendant acted in reckless disregard of Ms. Wilson's civil rights when it denied goods, services, facilities, privileges, advantages, and accommodations to Ms. Wilson.

72.     For its violations of the DCHRA, and in accordance with D.C. Code §§ 2-1403.13(a)(1) and 2-1403.16(b) and D.C. Mun. Regs. tit. 4, §§ 211 and 213, Defendant is liable to Ms. Wilson for compensatory damages, punitive damages, and reasonable attorneys' fees, expenses, and costs in amounts to be determined at trial, and all other available relief.

## V. PRAYER FOR RELIEF

**WHEREFORE**, for the foregoing reasons and based on the arguments and evidence and authorities that will be introduced in this matter, Plaintiff Ramona Wilson requests the following relief:

(a) A permanent injunction against Defendant, its officers, directors, agents, representatives, and those persons acting in association or concert with them, enjoining Defendant from engaging in any practice or activity that discriminates against any person on the basis of that person's disability, including prohibiting persons with disabilities from enjoying the use of Defendant's premises, and requiring Defendant to modify existing or adopt new practices and procedures to correct its discriminatory policies, as authorized by the ADA, 42 U.S.C. § 2000a-3, and the DCHRA, D.C. Code § 1403.13(a)(1)(C);

(b) An award of damages as authorized by the DCHRA, D.C. Code §§ 2-1403.13(a)(1)(D) and 2-1403.16 and D.C. Mun. Regs tit. 4, § 211, sufficient to compensate Ms. Wilson for her embarrassment, humiliation, and indignity resulting from Defendant's discriminatory conduct against her;

(c) An award of punitive damages as authorized by the DCHRA, D.C. Code § 2-1403.16, sufficient to punish Defendant for its discriminatory practices and policies in recklessly denying Ms. Wilson admission based on her disability;

(d) An award of costs of suit and reasonable attorneys' fees and expenses pursuant to the ADA, 42 U.S.C. §§ 12188(a)(1) and 12205, and the DCHRA, D.C. Code § 2-1403.16(b); and

(e) An award of such other and further relief as this Court may deem proper and just under the circumstances.

## VI. PRAYER FOR JURY TRIAL

Pursuant to Fed. R. Civ. Proc. Rule 38(b), Ms. Wilson prays for a trial by jury on all claims so triable.

May 25, 2011

Respectfully submitted,

Tirzah S. Lollar (D.C. Bar No. 497295)
John M. Faust (D.C. Bar No. 433553)
VINSON & ELKINS L.L.P.
2200 Pennsylvania Avenue, N.W.
Suite 500 West
Washington, D.C.  20037-1701
Telephone:  (202) 639-6500
Facsimile: (202) 639-6604

E. Elaine Gardner (D.C. Bar No. 271262)
WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS AND URBAN
AFFAIRS
11 Dupont Circle, N.W.
Washington, D.C. 20036
Telephone: (202) 319-1000
Facsimile: (202) 319-1010

*Counsel for Plaintiff Ramona Wilson*

Of Counsel:
Britt Cass Steckman
VINSON & ELKINS L.L.P.
2200 Pennsylvania Avenue, N.W.
Suite 500 West
Washington, D.C.  20037-1701
Telephone:  (202) 639-6500
Facsimile: (202) 639-6604